SUCCESSION OF JAMES MADISON ZACHARIE—JAMES WATERS ZACHARIE, Appellant.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

GARLAND, J. From a record of three hundred and fifty pages, made up of petitions, oppositions, accounts, notes, protests, evidence, parol and documentary, bills of exception, and all the mortuary proceedings relating to the succession of James Madison Zacharie, we have extracted the facts of this case, which presents no very important legal principles. In June, 1835, J. M. Zacharie died, leaving a widow, an heir *en ventre sa mère*, and several brothers and sisters. George W. Zacharie, one of the brothers, was, by consent of all parties, appointed administrator; and, after an inventory and sale of the property, which amounted to nearly $128,000, he presented to the Court of Probates a statement of the affairs of the succession and a list of privileged and ordinary debts, which he asked that he might be authorized to pay in the order stated in the tableau, amounting altogether to about $140,000. Of this sum, $52,576 18 was claimed by J. W. Zacharie & Co., as being due on an open account, for cash advances, and for a variety of articles sold, and a number of notes given by the deceased. The presentation of this statement of debts and privileges, produced a host of opponents, among whom was the widow, in her own right, and as tutrix of her minor child, born after the death of the father. Before an examination was made into the merits of this provisional statement, and the various oppositions to it, the administrator filed an amended statement of debts and privileges, which he prayed might be confirmed, and that he might be ordered to pay in conformity with it. This statement does not seem to have been more satisfactory to the creditors than the first; and, among a number of opponents, the widow was again prominent. She opposed the whole statement, denied the existence of the debts claimed, but more particularly attacked the claim of J. W. Zacharie & Co., which she alleges to be wholly unfounded, although admitted by the administrator. She avers, that the administrator has not accounted for all the assets and property be-

longing to the succession; and she especially opposes a claim set up by him.

The provisional tableau or statement was homologated so far as not opposed, and a trial had on the various oppositions, that to the claim of J. W. Zacharie & Co. being the principal, and the one on which this appeal is founded. The Judge of the Court of Probates reduced the claim of Zacharie & Co. $13,751 97, and allowed the balance, from which James W. Zacharie has appealed. In this court, the widow prays that other sums may be disallowed, and the whole claim rejected.

The Judge of the Court of Probates disallowed six items for cash advanced at different times, from the 18th of October, 1834, to May 2d, 1835, amounting to $5,720, on the ground that each item was over five hundred dollars, and was proved by only one witness, unsustained by corroborating circumstances. In this, we think, the judge erred. The testimony of one of the clerks of Zacharie & Co. to these items, is direct and positive. It appears that the charges were made regularly on the books of the firm. It is proved that James Madison Zacharie, was the near relative of J. W. Zacharie, who set him up in business as an architect and builder, and assisted him by endorsements; and it is proved by several witnesses that he was in the habit of lending him money, and doing all in his power to advance his interests. The deceased made the counting house of Zacharie & Co. his principal place of business; he was in and out every day; and people called there to see him on business. He had access to the books of the house, and all the clerks testify that he was in the habit of examining his account whenever he pleased, and that he did so frequently, and, particularly, a short time before his death. These items were then in the account, and he did not pretend that they were incorrect. It is also in evidence that J. M. Zacharie and J. W. Zacharie reposed the utmost confidence in each other; and that they had purchased on the corner of Canal and Rampart streets two lots of ground, on which they erected six dwelling houses on speculation, or for rent. They also purchased several lots between Old Levée and Clinton streets, near Bienville, on which large stores were erected. All this property stood in the name of James Madison Zacharie, but his relative was

known to their intimate friends, as being a partner. Houses were being erected on some or all of these lots, at the time these advances of money·were made. These buildings are proved to have cost large sums of money. At the same time James Madison Zacharie was carrying on his business as a builder, and had large contracts with Olivier, Thomas Barrett and others, which required a heavy outlay of money. The sums he was to receive from his employers were payable in instalments, and it is shown that he was obliged to have considerable sums every week to pay his workmen, and for labor and materials. It is proved his workmen were paid their wages every Saturday evening ; and by reference to the American Almanac, for the years 1834 and 1835, it appears, that all these sums were advanced on a Saturday, except one, and that is charged as having been advanced on Monday. All these are, in our opinion, circumstances that corroborate and sustain the testimony of the witness, who swears to these advances having been made.

The next items objected to, are a note of $4000, dated December 5th, 1834, payable ninety days after date, drawn to the order of J. W. Zacharie & Co., and another note for $3,500, dated March 7th, 1835, payable to the same payees, sixty days after date. These notes were discounted at the Louisiana State Bank, as appears by the testimony of Relf, the Cashier, who says that the one was given in renewal of the other. The evidence of other witnesses shows that these were accommodation notes, and Relf so considered them ; but the proceeds went to the credit of J. W. Zacharie & Co., as it was not marked on the face of the notes that they were for the accommodation of the drawer. The latter note, it is alleged, was renewed, in part, at maturity, by a note for $2,300, which was no doubt taken up by Zacharie & Co. In the account of the claimants, the estate is charged with $4000, on the 7th of March, 1835, as having been applied to the note of the 5th of December, 1834. At the date of this charge it is certain that Zacharie & Co. had received the proceeds of the note for $3,500, and when it became due they received the proceeds of another note, for none of which is any credit allowed to the estate. From a perusal of the evidence of Relf, and that of Faures, we cannot resist the impression that these notes were given in renewal of each other, and

we think that the Probate Judge did not err in deducting $7,500 from the claim.

The opponent further contends that the sum of $5,266 66 should be deducted, being the amount of a note given by the deceased to Zacharie & Co., endorsed by them, and afterwards taken up. This note was given by J. M. Zacharie to obtain a loan of $5000 from Moore, payable in eight months. That gentleman testifies that he gave the money to Theodore Zacharie, the clerk of J. W. Zacharie & Co. and the latter swears that he gave it to James M. Zacharie, when the note was presented. Upon this evidence, we cannot say that the Judge of the Court of Probates erred in allowing this amount to the claimant.

The opponent further states, that a note for $3,500, dated February 3d, 1835, payable to the order of J. W. Zacharie & Co. sixty days after date, should be deducted from their claim. This note, it appears, was discounted in the Union Bank of Louisiana, and the proceeds went to the credit of the drawees. Faures, their clerk, says that the proceeds of this note, although he did not know of his own knowledge where it was discounted, went to pay a note of the deceased for $4000, dated the 2d of December, 1834, which is not produced, either by the firm of Zacharie & Co., or by the administrator. We do not think the application of the proceeds of this note to a debt of the deceased, is sufficiently established, and are of opinion that it ought to be deducted.

In the argument of the cause, the counsel for the widow, has urged that it was the intention of Zacharie & Co., and of the administrator so to manage the succession, as to make it appear insolvent, when in fact it was not so, and thereby to defraud the widow and heir. It is in evidence, that soon after the death of James Madison Zacharie, his relation James stated, that he thought the succession would be worth about $30,000. It does not appear that at this time a list of the debts had been made or their amount ascertained, and he might, from the amount of property, have supposed the estate worth that much; but when the amount was ascertained, it is proved that J. W. Zacharie gave a different opinion. It is in evidence that George Zacharie, also stated, a few days after his brother's death, that the succession was worth $30,000 or $40,000, but that it was in his power to make it ap-

pear insolvent; but there is no proof that James ever made any such declaration, or knew of its having been made. However reprehensible such a remark or intention may have been, on the part of the administrator George W. Zacharie, it is not in our power now to apply a remedy, as the widow is not an appellant from any part of the judgment rendered, and does not ask for any amendment of it, except in relation to J. W. Zacharie & Co.

The judgment of the Court of Probates, is, therefore, ordered to be amended, by adding to the claim of J. W. Zacharie & Co., the sum of two thousand two hundred and twenty dollars, it being the difference between the sum of $5,720, which we think was improperly rejected by the Court of Probates, and the sum of $3,500 which was illegally admitted; and is, in all other respects, affirmed, with costs.

*T. Slidell*, for the appellant.

*Preston*, contra.